**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

**CHANTAY KANGALEE**,

        *Plaintiff*,

  v.

**BALTIMORE CITY POLICE
DEPARTMENT, et al.**

       *Defendants*.

**Case No.: 1:12-cv-01566-RDB**

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW, Plaintiff Chantay Kangalee, by and through counsel, Cary J. Hansel and the law firm of Joseph, Greenwald & Laake, P.A., and opposes Defendants' Motion to Dismiss Plaintiff's Amended Complaint, and in furtherance thereof states as follows:

**I.**      **INTRODUCTION**

This case arises from a deprivation of Fourteenth Amendment and Fourth Amendment rights pursuant to 42 U.S.C. § 1983, conspiracy pursuant to 42 U.S.C. § 1985, neglect to prevent conspiracy pursuant to 42 U.S.C. § 1986, an intentional infliction of emotional distress, and gross negligence. Plaintiff Chantay Kangalee filed this suit after Officer Gahiji Tshamba ("Officer Tshamba") of the Baltimore Police Department ("BPD") drunkenly aimed his service weapon at Ms. Kanagalee and her brother outside of a night club in Baltimore, Maryland and then shot her brother twelve times in front of her.

Defendants BPD and Commissioner Frederick Bealefeld, III filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), claiming that Ms. Kangalee failed to plead a cause of action for each of her claims. Despite Defendants' motion, Ms. Kangalee has pleaded

sufficient facts and stated claims upon which relief can be granted as her constitutional right to freedom of unlawful seizure were violated, she was denied substantive due process rights, and Officer Tshamba acted in an extreme and outrageous manner. Defendants' Motion to Dismiss Plaintiff's Amended Complaint should be denied accordingly.

## II.   <u>STATEMENT OF FACTS</u>

On June 4, 2010, Chantay Kangalee and her brother, Tyrone Brown, were socializing in the Mount Vernon neighborhood of Baltimore, Maryland. Am. Compl. 3:9. At or about 0030, Ms. Kangalee told her brother that she was ready to go home and began to walk toward her car. Am. Compl. 4:10. Mr. Brown suggested that they go to Red Maple, a nightclub in Baltimore, and he and Ms. Kangalee walked toward the club. *Id.*

As Ms. Kangalee and Mr. Brown approached Red Maple, they came up behind a woman, Crystal Ramsey, who was with some of her friends, including Officer Tshamba. Am. Compl. 4:11-14. Mr. Brown patted Ms. Ramsey on the buttocks, which caused Ms. Ramsey to turn around and tell Mr. Brown, "That's disrespectful." Am. Compl. 4:11-12. Mr. Brown apologized to Ms. Ramsey, stating, "My bad. I'm sorry." Am. Compl. 4:13. Ms. Ramsey turned away from Mr. Brown and began a discussion with her friend, Officer Tshamba. Am. Compl. 4:14. Then, after a minute or two had elapsed, without warning, Ms. Ramsey turned around to swing at Mr. Brown's face. Am. Compl. 4:14-15. Mr. Brown attempted to prevent Ms. Ramsey from strking him by grabbing her arm. Am. Compl. 4:16.

This exchanged prompted Officer Tshamba, who was out of uniform, to pull up his shirt and remove his department-issued service weapon. Am. Compl. 4:17. Officer Tshamba carelessly waived his weapon and taunted Mr. Brown and Ms. Kangalee with "Now what? Now what?" Am. Compl. 4:18. Officer Tshamba challenged Mr. Brown to "Do it again." *Id.*

Officer Tshamba smelled of alcohol and his eyes appeared glassy from drinking and/or drug use. Am. Compl. 4:19. Concerned that the situation was escalating, Ms. Kangalee exclaimed, "Someone should call the cops." Am. Compl. 5:21. A friend of Officer Tshamba and Ms. Ramsey responded, "He is a cop." Am. Compl. 5:22. Upon learning that Officer Tshamba was a police officer, Ms. Kangalee approached her brother to try to pull him away and deescalate the confrontation. Am. Compl. 5:23.

Officer Tshamba waived his gun aggressively at Ms. Kangalee and Mr. Brown as they stood near each other. Am. Compl. 5:24. Ms. Kangalee was in fear for her life as the gun was trained on both her and Mr. Brown. Am. Compl. 5:26. Mr. Brown turned toward Ms. Kangalee and told her to back away as he stood with his hands in the air and began to back away himself. Am. Compl. 5:25. Officer Tshamba continued to waive his gun aggressively at them. Am. Compl. 5:27. Despite neither Ms. Kangalee nor Mr. Brown presenting a threat to Officer Tshamba or anyone else, Officer Tshamba fired thirteen shots from his duty weapon at Mr. Brown and Ms. Kangalee, in quick succession, from approximately three feet away. Am. Compl. 5:28. Ms. Kangalee helplessly watched as her brother was shot twelve times, unable to do anything to prevent his death. Am. Compl. 6:32.

Mr. Brown clutched his stomach and screamed out that he had been shot. Am. Compl. 6:31. Twelve of the thirteen shots struck Mr. Brown in the chest, stomach, and groin. Am. Compl. 5:29. Ms. Kangalee became physically ill from watching Officer Tshamba fatally shoot her brother and from watching her brother bleed to death in front of her. Am. Compl. 6:32. Ms. Kangalee immediately began to administer CPR; however, Mr. Brown died from the gunshot wounds less than one hour later. Am. Compl. 6:31-34.

After shooting Mr. Brown, Officer Tshamba walked over to his friends and did nothing to assist Mr. Brown or Ms. Kangalee. Am. Compl. 6:33. Officer Tshamba refused to take a breathalyzer test to confirm if he had been drinking. Am. Compl. 6:36.

On July 12, 2010, Officer Tshamba was charged with first-degree murder, second-degree murder, manslaughter, and using a handgun in commission of a crime. Am. Compl. 6:39. On June 9, 2011, Officer Tshamba was found guilty of manslaughter and use of a handgun in committing a crime and sentenced to 7 years and 10 years of jail, respectively. Am. Compl. 6:40.

Since witnessing her brother's murder, Ms. Kangalee has suffered from severe mental and emotional distress. Am. Compl. 6:41. Ms. Kangalee has been under the care of a psychiatrist and psychologist to treat her for anxiety, depression, and paranoia as a result of Officer Tshamba's actions surrounding her brother's death. Am. Compl. 7:42. Ms. Kangalee's day-to-day life functions, such as sleeping, and her overall happiness have been severely impacted because of Officer Tshamba. Am. Compl. 7:43.

## III.  **LEGAL STANDARD**

In ruling on a Rule 12(b)(6) motion to dismiss, the court must "accept the well-pleaded allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, the court must "disregard the contrary allegations of the

opposing party." *Gillespie v. Dimension Health Corp.*, 369 F. Supp. 2d 636, 640 (D. Md. 2005).

A motion to dismiss for failure to state a claim for relief should not be granted if the complaint is plausible on its face. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, at 1949. Thus, the defendant must prove that plaintiff's complaint does not allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.,* at 1940. The federal rules require that, in order to maintain the motion as a motion to dismiss, the defendant must prove these elements without presenting evidence extrinsic to the plaintiff's complaint. Fed. R. Civ. P. 12(d). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).

In ruling on a motion to dismiss, the Court decides whether the facts alleged, treated as true, would entitle plaintiff to some form of legal remedy. Rule 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief..." Fed. R. Civ. P. 8(a)(2). Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz,* 534 U.S. at 512. A pleader meets this obligation by notifying the opponent of the claim and proposed relief to such a degree that the opponent is able to formulate a response. *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346-47 (2005). Furthermore, all pleadings must be construed so as to do substantial justice. Fed. R. Civ. P. 8(e).

A complaint need only satisfy the minimal notice pleading requirements of Rule 8 to survive a motion to dismiss. "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the' claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197 (2007) (quoting *Twombly,* 550 U.S. at 555). However, allegations of fraud must be "stated with particularity." Fed. R. Civ. P. 9(b). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Id.,* at 94. Thus, a motion to dismiss should be denied where the factual allegations "raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

As explained below, Ms. Kangalee's Amended Complaint states claims upon which relief can be granted and are plausible on their faces. For the following reasons, Ms. Kangalee respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss.

## IV.    <u>ARGUMENT</u>

### a.  PLANTIFF PLEADED A COGNIZABLE § 1983 CLAIM.

Ms. Kangalee may bring a claim under § 1983 as she alleges her Fourth Amendment rights to be free from unreasonable seizure and the excessive use of force and her substantive due process rights were violated. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to any party injured in an action at law." 42 U.S.C. § 1983.

To prove a § 1983 violation, a plaintiff must establish that: (1) a person acted under color of state law in the conduct being complained of; and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Tellingly, Officer Tshamba did not allege that his actions were outside the

color of law, nor has he presented any arguments that challenge the fact that he was acting under of law during all of the alleged acts. Thus, at issue in these motions is the second prong of the test: whether Defendant's conduct deprived Ms. Kangalee of any of her constitutional rights or privileges. Because Ms. Kangalee has sufficiently pleaded specific facts showing an unreasonable seizure, the excessive use of force, and the denial of substantive due process, she has cognizable § 1983 claims, and, as such, Counts I and II must survive.

### i. Officer Tshamba's Conduct Deprived Ms. Kangalee of Her Fourth Amendment Right against Unreasonable Seizure.

Ms. Kanagalee has sufficiently pleaded § 1983 claims of unreasonable seizure and excessive use of force, as Officer Tshamba, in response to a totally innocuous situation, drew his weapon, trained it at Ms. Kangalee and Mr. Brown, and fired thirteen shots in their direction. "The right of people to be secure … against unreasonable searches and seizures, shall not be violated … but upon probable cause." U.S. Const. amend. IV. In the context of the Fourth Amendment, a seizure has occurred if "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *See also Trull v. Smolka*, 411 Fed. Appx. 651, 659 (4th Cir. 2011) ("[A] person is 'seized' only when, by means of physical force or show of authority, his freedom of movement is restrained.") (citing *Mendenhall*, 446 U.S. at 553). In *Mendenhall*, the Supreme Court held that a person merely approached by an officer is not seized where there is no evidence that a reasonable person would not believe that she is free to leave. 446 U.S. at 554. The *Mendenhall* Court suggested that circumstances constituting a seizure might include the threatening presence of police officers, the display of a weapon by an officer, or "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*; *See also United States v. Gray*, 883 F.2d 320, 322 (4th Cir. 1989); *United*

*States v. Cotton*, 2005 U.S. Dist. LEXIS 37686, at *12-13 (D. Md. 2005) (holding a person not free to leave where officers "confronted [him] in an accusatory manner"); *Morris v. United States*, 2007 U.S. Dist. LEXIS 98060, at *21 (S.D. W. Va. 2007) (noting "there is little question that [the officer] 'seized' Defendant when he unholstered his weapon, held it at the 'low ready' position").

In support of Defendants' argument that Ms. Kangalee was not seized, Defendant appears to suggest that the standard for determining whether a "seizure" occurred is the same as for whether an "arrest" occurred. This is obviously wrong. *See, e.g., United States v. Hill*, 471 Fed. Appx. 143, 155 (4th Cir. 2012) (distinguishing seizures from arrests). Indeed, the entire post-*Terry corpus juris* is predicated on the notion that there are non-arrest seizures, subject to a conceptually distinct standard of review.

In order to prevail on a § 1983 claim of unconstitutional seizure, a plaintiff must show that the officer acted in a manner not "'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Johnson v. Montiminy*, 95 Fed. Appx. 18, 19 (4th Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

In the present case, it is unquestionably clear that a seizure occurred and that Officer Tshamba's conduct was patently unreasonable. In her Amended Complaint, Ms. Kangalee stated that Officer Tshamba's gun was trained on her during the relevant confrontation. Ms. Kangalee knew that Officer Tshamba was a police officer. Additionally, Officer Tshamba waived his gun aggressively in Ms. Kangalee's direction. Officer Tshamba was in close proximity to Ms. Kangalee. Because of Officer Tshamba's actions, Ms. Kangalee feared for her life. When these facts are taken in the light most favorable to Ms. Kangalee, it is clear that

a reasonable person in Ms. Kangalee's position would not believe that she would be free to leave.

The United States Constitution mandates that the force used by police officers be reasonable under objective criteria based on the totality of the circumstances. *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1984). "Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz,* 533 U.S. 194, 206 (2001). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene." *Graham*, 471 U.S. at 397. In determining whether officers used reasonable force the court should consider the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect] was actively resisting arrest or attempting to evade arrest by flight." *Id.* Clearly, shooting an unarmed citizen twelve times is objectively unreasonable under these circumstances.

### ii. Ms. Kangalee's Substantive Due Process Rights Were Violated by Officer Tshamba.

Ms. Kangalee has sufficiently pleaded violations of her substantive due process rights under the Fourteenth Amendment. The Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of government … to prevent governmental power from being used for purposes of oppression." *Temkin v. Frederick Cnty. Comm's*, 945 F.2d 716, 720 (4th Cir. 1991) (quoting *Daniels v. Williams*, 474 U.S. 327, 331-32 (1986)). In the Amended Complaint, Ms. Kangalee alleged that Officer Tshamba's conduct (1) shocked the conscience, (2) violated Ms. Kangalee's right to familial association, and (3) deprived her of her substantive due process rights.

**1.** ***Officer Tshamba's Arbitrary and Brutal Conduct Shocked the Conscience.***

As alleged in the Amended Complaint, Officer Tshamba's conduct was brutal and inhumane. "[C]onduct which 'shocks the conscience' or 'amount[s] to a brutal and inhumane abuse of official power literally shocking to the conscience' violates the substantive guarantees of the Due Process Clause." *Temkin*, 945 F.2d at 720 (quoting *Rochin v. California*, 342 U.S. 165 (1952) and *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)). Conduct that is either "deliberately indifferent" or "intended to injure" is likely to "rise to the conscience-shocking level for Fourteenth Amendment purposes." *Waybright v. Frederick County Md. Dep't of Fire & Rescue Servs.*, 475 F. Supp. 2d 542, 550 (D. Md. 2007) (citing *Young v. City of Mt. Ranier*, 238 F.3d 567 (4th Cir. 2001)). Notably, "due process at the core combats 'arbitrary action' of government." *Waybright v. Frederick County*, 528 F.3d 199, 204 (4th Cir. 2008) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).

It is beyond dispute that Officer Tshamba's actions against Ms. Kangalee and her brother constituted an egregious, arbitrary, and brutal abuse of power. The event which precipitated Officer Tshamba's drawing and firing of his department-issued weapon was an innocuous exchange between Mr. Brown and Ms. Ramsey. In response to this exchange, Officer Tshamba drew his service weapon and aimed it at both Mr. Brown and Ms. Kangalee. When Mr. Brown attempted to remove Ms. Kangalee from close proximity to Officer Tshamba, Officer Tshamba responded by firing his weapon and shooting Mr. Brown twelve times. Clearly, Officer Tshamba's behavior was a brutal and inhumane abuse of official power, malicious to the point of bordering on the sadistic, as he used his service weapon to threaten Ms. Kangalee and kill Mr. Brown. Officer Tshamba elevated a harmless situation to

one where deadly force was used without provocation. Indeed, it is difficult to comprehend a more arbitrary and senseless course of action than the one taken by Officer Tshamba.

### 2. *Ms. Kangalee Has a Due Process Right to Familial Association.*

Ms. Kangalee's right to familial association with her brother was unjustly interfered with by Officer Tshamba. Substantive due process gives "highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Roberts v. United States Jaycees*, 468 U.S. 609, 618-19 (1984). "[E]ven though plaintiff did not live with his … siblings, we must assume those relationships, too, were of such an intimate nature as to warrant the highest level of constitutional protection." *Patel v. Searles*, 305 F.3d 130, 136 (2nd Cir. 2002); *See also Smith v. Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987); *Bell v. Milwaukee*, 746 F.2d 1205, 1245 (7th Cir. 1984); *Trujillo v. Board of County Comrs*, 768 F.2d 1186, 1189-90 (10th Cir. 1985) (recognizing right of familial association). In *Patel*, the Second Circuit Court of Appeals held that the right to intimate association in the context of a family situation creates substantive due process rights that are actionable under § 1983. *Id. Patel* alleged a violation of the right to intimate association under § 1983 after the plaintiff's siblings and parents ostracized him following a criminal investigation. *Id.* at 133. Like the instant case, the *Patel* holding came from a Rule 12 motion for judgment on the pleadings where all inferences are made in favor of the non-moving party. *Id.* at 136.

The Fourth Circuit has previously recognized that the right to close familial association exists. In *Rucker v. Harford Cnty.*, the Fourth Circuit noted that other courts have recognized the right to intimate association under both the substantive due process clause and the First Amendment. 946 F.2d 278, 282 (4th Cir. 1991). While the Court noted that the right been recognized in other circuits, the Fourth Circuit reserved the matter to decide at another

date. *Id.* at 283. The Court specifically avoided the issue of the right to intimate association as facts of the *Rucker* case did not give rise to the right. *Id.* The Court presented two theories under which a right to intimate association might succeed: (1) the conduct is directed at or directly impinges upon a familial relationship; and (2) the conduct violated another constitutional right and caused incidental injury to an associational interest. *Id.* at 282-83. In *Rucker*, the alleged conduct met neither of those claims. *Id.* In *Rucker*, during a chase of a fleeing drug suspect, the police accidentally shot and killed an innocent bystander. *Id.* at 280. The deceased's father, who was not present at the shooting, brought suit against police department for the denial of his substantive due process rights. *Id.* In comparison, Ms. Kangalee was present and directly witnessed the shooting of her brother. Indeed, Officer Tshamba even trained his service weapon at her, and had fired in her direction when Mr. Brown was killed.

At this stage of litigation, Ms. Kangalee presents a well-pleaded claim for a deprivation of substantive due process. Ms. Kangalee had a close familial relationship with her brother. She has also pleaded that her relationship with her brother has been deprived as a result of Officer Tshamba's offensive conduct. As discussed above, Officer Tshamba's conduct of an unprovoked, drunken shooting of an unarmed man thirteen times at point-blank range in front of the victim's sister is outrageous and shocks the conscious.

Importantly, if this Court were to determine that there is no substantive due process claim for the loss of love and support of a family member, Ms. Kangalee should still be allowed to proceed on her Fourteenth Amendment claim, as she herself was personally victimized by Officer Tshamba's brutal and arbitrary conduct, as Officer Tshamba aimed his service weapon in her direction and fired.

### 3. *Physical Injury is Not Required For Substantive Due Process Violations.*

Despite Defendant's argument, Ms. Kangalee does not have to plead physical injury to assert deprivation of her substantive due process rights. Defendants cite to language about physical injuries in *Rucker v. Harford County* and *Willis v. Oakes*, and suggests that physical injury is a requirement of any substantive due process claims. While the language of both cases discusses physical injury, neither case suggests that physical injury is an absolute requirement for pleading a Fourteenth Amendment violation. Ms. Kangalee must only allege facts showing that she was deprived of a constitutional protection, not that physical force was the cause of her deprivation. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (holding that a complete § 1983 claim requires only allegations that the person's conduct was under color of law and the said conduct deprived the person of a constitutional right).

In the context of the 8th Amendment, courts have held that the question of constitutional injury depends on the nature of the applied force, rather than the quantity of injury resulting from the force. *See, e.g., Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (U.S. 2010) (noting for 8th Amendment excessive force claim, inquiry is not "whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'") (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *Brown v. Lippard*, 472 F.3d 384, 386 (2006) ("This Court has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an [8th Amendment] excessive force claim"); *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 250 (4th Cir. Va. 2005) (suggesting due process rights "are at least as great" as 8th Amendment protections) (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). And, in the context of school discipline, courts have recognized that the imposition of corporal

punishment may constitute a deprivation of liberty, in violation of substantive due process. *See, e.g., Kirkland ex rel. Jones v. Greene County Bd. of Educ.*, 347 F.3d 903, 904 (11th Cir. 2003) (finding the use of force presenting a "reasonably foreseeable risk of serious bodily injury" to violate substantive due process); *P.B. v. Koch*, 96 F.3d 1298, 1303–04 (9th Cir. 1996) (holding school instructors who use unjustified force for malicious purposes violate substantive due process). These cases demonstrate the principle that constitutional deprivation often does not necessarily depend on the extent to which an individual is physically injured, but rather on the nature of official act causing the injury. Importantly, the underlying analysis in these cases asks whether the official action was arbitrary; that is, whether it was reasonable given the circumstances surrounding it.

In the present case, Ms. Kangalee has demonstrated that her liberty was deprived when Officer Tshamba arbitrarily trained his service weapon at her and her brother, seizing her, and that she was subjected to arbitrary punishment when Officer Tshamba fired his weapon in her direction, killing her brother.

### b. THE BALTIMORE POLICE DEPARTMENT IS LIABLE UNDER *MONELL* FOR CONTINUED INANCTION TO CORRECT A CUSTOM THAT LEADS TO VIOLATIONS OF CONSTITUTIONAL RIGHTS.

Ms. Kangalee has properly pleaded a claim against the Department for failure to correct the negligent and intention misuse of guns while carried off-duty and failure to create a policy which precludes the carrying of a weapon in situations that pose an unusually high risk of misuse. A widespread practice, custom, or usage may be the basis for liability if its "continued existence can be laid to the fault of the municipal policy-markers" and a causal connection between the custom and usage and violation can be shown. *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). The existence of a policy or custom can be established "(1)

through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as failure to properly train officers …; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Harden v. Montgomery Cnty, Md.*, No. 91-1657 at *2 (D. Md. Oct. 6, 2010) (citing *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)) (internal quotation marks omitted). A municipality must have knowledge, actual or constructive, of the improper custom and fail to correct it. *Spell*, 824 F.2d 1380 at 1391. Deliberate indifference can be shown through "continued inaction in the face of documented widespread abuses." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 210 (4th Cir. 2002). In *Randall*, plaintiff said she was unconstitutionally detained for an interrogation and stated that there was a custom of unconstitutional detentions by the defendant police department, but failed to present any evidence of prior abuses. *Id.* at 211. Because they did not provide such facts, the Court held that the claim must fail. *Id.*

The custom at issue here is the police department's requirement that off-duty police within the Baltimore City limits be suitably armed. As alleged in the Amended Complaint, this is a written regulation, and thus the existence of the policy can be established. While the mere act of carrying a weapon while off-duty is a reasonable policy for the Department, the Department has failed to correct negligent and intentional misuse of weapons that are carried under that policy. Ms. Kangalee identified approximately 20 instances of off-duty officers using their weapons in an abusive manner either negligently or intentionally. Further, the Department has failed to create a policy to prevent officer from carrying weapons off-duty in circumstances that pose an unusually high risk of misuse, like carrying a gun to a nightclub while drunk, as in this situation. The municipality was well-aware of the abuse of the policy

to carry weapons while off-duty as the abuses identified in the Amended Complaint date back to 1995 – over 15 years ago. However, the BPD has turned a blind eye to these abuses, allowing continued negligent and intentional misuse of firearms by off-duty officers. The Department's continued inaction in revising its policy demonstrates a deliberate indifference to the problems with the policy in question.

Unlike *Randall*, Ms. Kangalee has alleged specific prior abuses of the policy in question, and she detailed these in her Amended Complaint. Further, Ms. Kangalee has pleaded a proper causal connection between the policy and the injuries she suffered – Officer Tshamba's carrying of a weapon off-duty lead to her being unlawfully seized by Officer Tshamba as he seized her using his service weapon and Officer Tshamba used the same weapon to kill her brother and cause a loss of intimate association. Ms. Kangalee has presented a complete claim for municipal liability against the Department as the policy has lead to widespread constitutional right violations that have not been corrected by the Department. Therefore, Claim V must survive.

### c. THE SUPERVISORY LIABILITY CLAIM AGAINST COMMISSIONER BEALEFELD SHOULD NOT BE DISMISSED.

Ms. Kangalee has a well-pleaded against Commissioner Bealefeld for supervisory liability. A supervisory official can be liable for injuries based on a supervisor's knowledge that the subordinate engaged in conduct that posed a risk of constitutional injury to citizens, the supervisor's response showed deliberate indifference to the conduct, and there is a casual link between the supervisor's inaction and the plaintiff's injuries. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Deliberate indifference can be shown through "continued inaction in the face of documented widespread abuses." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 206 (4th Cir. 2002) (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)). In *Randall*,

plaintiff sued the police chief for her unconstitutional detention for an interrogation and stated that there was a custom of unconstitutional detentions by the defendant police department of which the chief was aware, but failed to present any evidence of prior abuses. *Randall* at 200-10.  Because the plaintiff did not provide such facts, the Court held that the claim against the supervisor must fail. *Id.* at 210-11.

Since the facts must be viewed in the light most favorable to Ms. Kangalee, her claim of supervisory liability should not be dismissed. Unlike *Randall*, Ms. Kangalee has sufficiently alleged that there was a pattern of conduct of negligent and intentional misuse of department-issue weapons while off-duty that demonstrates that Commissioner Bealefeld had constructive knowledge of Officer Tshamba's risky conduct and his failure to correct the situation resulted in Ms. Kangalee's injuries. Additionally, Commissioner Bealefeld has failed to prevent this misuse by not precluding officers from carrying their weapons in circumstances that present an unusually high risk of misuse, like officers carrying their weapons while they are out drinking. Ms. Kangalee provided instances of previous risky behavior by Officer Tshamba. Additionally, she pleaded that Officer Tshamba had not been adequately disciplined by Commissioner Bealefeld. Commissioner Bealefeld attempts to present information about disciplinary procedures of the Department that would not allow him to discipline Officer Tshamba, which is outside of Ms. Kangalee's Amended Complaint. Whether the information he presents truly prohibited from taking disciplinary actions against Officer Tshamba cannot be resolved at this stage of litigation as it goes to matters outside of what is alleged in the Amended Complaint. However, Ms. Kangalee properly pleaded a claim for supervisory liability against Commissioner Bealefeld, and she should be able to present evidence of her claims to substantiate them.

### d. OFFICER TSHAMBA IS NOT ENTITLED TO QUALIFIED IMMUNITY.

At this stage of litigation, Officer Tshamba has not pleaded enough facts to assert qualified immunity. Qualified immunity attaches only when the actor is a public official, acting in his official capacity, but within a discretionary function commits a non-intentional tortious act. *See Cox v. Prince George's County,* 296 Md. 162,168-169, 460 A.2d 1038 (1983))("... a police officer, who might otherwise have the benefit of this immunity, does not enjoy it if the officer commits an intentional tort or acts with malice."). A state public official who is alleged to have violated Md. Const. Decl. Rights Art. 24, or any article of the Maryland Declaration of Rights, is not entitled to qualified immunity. *Okwa v. Harper,* 360 Md. 161, 201, 75 A.2d 118 (2000). *See also Tavakoli-Nouri,* 139 Md. App. at 734).

The allegations of the complaint and the supporting evidence presented clearly allege intentional state and federal constitutional violations, both committed with malice, and eliminate a qualified immunity defense. At a minimum, sufficient evidence exists as to the intentional torts, state and federal constitutional violation, and malicious acts such that a claim of qualified immunity as a matter of law is unsustainable and inappropriate. Additionally, officers are not to be afforded public official immunity, when they act with malice within the scope of their employment.

In Maryland, qualified immunity does not apply to constitutional claims. *See Robles v. Prince George's County,* 302 F.3d 262, 273 (4th Cir.2002). The test of qualified immunity for police officers sued under 42 U.S.C. §1983 is whether in performing discretionary functions, they have engaged in conduct that violates "clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

Furthermore, qualified immunity is not intended to be a license for lawless conduct. *Malley v. Briggs,* 475 U.S. 335, 341(1986); *Harlow,* 457 U.S. at 819 (holding "[w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.")

Given these circumstances, it is highly likely that the jury will find malice. Officer Tshamba fired his service weapon thirteen times. Twelve of those rounds found their mark in Mr. Brown's body. There is no doubt Officer Tshamba intended to injure Mr. Brown and Ms. Kangalee. To claim qualified immunity, government officials must show that the alleged violation under § 1983 was not a violation of a clearly established right which a reasonable person would have known. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006). The "salient question" is whether the state of the law at the time of the events in question gave the officials "fair warning" that their conduct was unconstitutional. *Id.* at 313 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Thus, "officials can still be on notice that their conduct violates established law even in *novel* factual circumstances." *Id.* (emphasis added).

In viewing the alleged facts in the light most favorable to Ms. Kangalee, it is clear that Officer Tshamba's acts were unreasonable. Ms. Kangalee has a right to be free from unconstitutional seizures. There was no constitutional reason for Officer Tshamba to point the gun at Ms. Kangalee. Further, Ms. Kangalee has a valid claim because the conduct caused incidental injury to her associational interest with Mr. Brown. Officer Tshamba has not provided sufficient facts to claim qualified immunity or public official immunity.

### e. COMMISSIONER BEALEFELD IS NOT ENTITLED TO QUALIFIED IMMUNITY.

At this stage of litigation, Commissioner Bealefeld has not pleaded enough facts to assert qualified immunity. Qualified immunity attaches only when the actor is a public official, acting in his official capacity, but within a discretionary function commits a non-intentional tortious act. *See Cox v. Prince George's County,* 296 Md. 162, 168-169 (1983) ("... a police officer, who might otherwise have the benefit of this immunity, does not enjoy it if the officer commits an intentional tort or acts with malice."). A state public official who is alleged to have violated Md. Const. Decl. Rights Art. 24, or any article of the Maryland Declaration of Rights, is not entitled to qualified immunity. *Okwa v. Harper,* 360 Md. 161, 201, 75 A.2d 118 (2000). *See also Tavakoli-Nouri,* 139 Md. App. at 734. "The Maryland public official immunity doctrine is quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct." *Lee v. Cline*, 384 Md. 245, 258 (2004).

Commissioner Bealefeld grossly abused the public trust by permitting Officer Tshamba to carry is department-issued service weapon while intoxicated and killing an unarmed man who posed no threat. This incident was not the first time that Officer Tshamba fired his department-issued service weapon during an off-duty altercation.  In September 2005, Officer Tshamba shot a man in the foot while intoxicated.  Clearly, Officer Tshamba's acts were a foreseeable cause of the injuries sustained by Ms. Kangalee. As the Commissioner of the BPD, Commissioner Bealefeld had the authority to make personnel decisions, including, but not limited to, terminating officers. Commissioner Bealefeld possessed the discretionary authority to prevent Officer Tshamba from carrying his service weapon while intoxicated.  His failure to do so cost Mr. Brown his life and resulted in substantial personal injuries and constitutional violations for Ms. Kangalee.

In viewing the alleged facts in the light most favorable to Ms. Kangalee, it is clear that Commissioner Bealefeld's acts were unreasonable. Ms. Kangalee has a right to be free from unconstitutional seizures. There was no constitutional reason for Officer Tshamba to point the gun at Ms. Kangalee. Further, Ms. Kangalee has a valid claim because the conduct caused incidental injury to her associational interest with Mr. Brown. Commissioner Bealefeld has not provided sufficient facts to claim qualified immunity or public official immunity.

### f.   MS. KANGALEE HAS WELL-PLEADED § 1985 & § 1986 CLAIMS.

Ms. Kangalee's conspiracy claims should not be dismissed. **"**If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, ...; the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3). Because conspiracy by its very nature is secretive, plaintiffs need only allege that there was "'communication, consultation, cooperation, or command' from which such an agreement can be inferred." *Yates v. Hagerstown Lodge No. 212 Loyal Order of Moose*, 878 F. Supp. 788, 802-03 (D. Md. 1995) (quoting *Weathers v. Ebert*, 505 F.2d 514, 517 (4th Cir. 1974). While each of the defendants makes a motion to dismiss this claim, none of them assert that Ms. Kangalee has failed to properly plead this claim. Instead, they claim that the intracorporate conspiracy doctrine bars suit under § 1985 against government agencies. Consequently, it appears that there is no dispute that Ms. Kangalee has well-pleaded claims under § 1985 and § 1986, and they should not be dismissed.

The intracorporate conspiracy doctrine does not bar Ms. Kangalee's claims. The intracorporate conspiracy doctrine provides agents of one government entity are incapable of

conspiring together as they act as a single entity. *Lewin v. Cooke*, 28 F. App'x 186, 195 (4th Cir. 2002). However, there is an exception when the individual defendants have "an independent personal stake" in the alleged conspiracy or the defendant's acts are unauthorized by the government agency. *Id.* (citing *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974) and *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985)). In *Lewin*, the Fourth Circuit Court of Appeals held that without an exception to the intracorporate conspiracy doctrine, a conspiracy claim against a government entity for civil rights violations cannot be maintained. *Id.* In addition to an educational privacy act claim, the plaintiff in *Lewin* alleged that the defendants conspired to withhold information about his exams and subsequent dismissal from college. *Id.* at 191. The claim failed because the plaintiff failed to show his case met the exceptions of the doctrine. *Id.* at 195.

Unlike *Lewin*, Ms. Kangalee has shown this case is an exception to the doctrine of intracorporate conspiracy. From Ms. Kangalee's Amended Complaint, it is clear that Officer Tshamba acted outside of what is authorized by the Department. This does not mean that he was not acting under color of law as Defendants claim, but that he exceeded the bounds of his authority when pointed his duty weapon at Ms. Kangalee without probable cause or even suspicion. Commissioner Bealefeld conspired in allowing Officer Tshamba to continue to carry his duty weapon even after repeated offenses of improper use of his weapon while off duty. The Department's command under Commissioner Bealefeld that Officer Tshamba carry his duty weapon while off duty shows that the two conspired, and Officer Tshamba's act of going beyond the bounds of authority completes the exception to the doctrine of intracorporate conspiracy. All Defendants neglected to prevent the conspiracy. Defendants had knowledge that failing to discipline, properly train, and/or terminate Officer Tshamba for

22

previous incidents of alcohol-fueled shooting and his propensity to escalate petty slights into violent confrontations, thereby created an environment in which the conspiracy was permitted. Therefore, Ms. Kanaglee's claim should not be dismissed as the doctrine of intracorporate conspiracy does not apply. Counts III and IV must survive.

## V.    <u>CONCLUSION</u>

Plaintiff Kangalee's Amended Complaint sufficiently states a claim for relief and Defendants fail to meet the substantially high burden warranting a motion to dismiss.

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court dismiss Defendants' Motion to Dismiss Plaintiff's Amended Complaint in its entirety. In the alternative, Plaintiff requests leave to amend.

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

_____/s/_____
Cary J. Hansel (Bar No. 14722)
6404 Ivy Lane
Suite 400
Greenbelt, Maryland 20770
301.220.2200 (T)
301.220.1214 (F)
chansel@jgllaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of September, 2012, a true copy of the foregoing was served on all parties of record via its filing in accordance with the Electronic Filing Requirement and Procedures as established by the U.S. District Court for the District of Maryland.

_____/s/_____
Cary J. Hansel (Bar No. 14722)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

**CHANTAY KANGALEE**,

                  *Plaintiff*,

    v.

**BALTIMORE CITY POLICE**
**DEPARTMENT, et al.**

                  *Defendants*.

                                  **Case No.: 1:12-cv-01566-RDB**

## ORDER

Upon consideration of Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff's opposition hereto, and any hearing held in open Court, it is this _____ day of _____, 2012, hereby

**ORDERED**, that Defendants' Motion to Dismiss Plaintiff's Amended Complaint is **DENIED**, in its entirety.

                              _____
                              Honorable Richard D. Bennett
                              United States District Court Judge