IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHANTAY KANGALEE,           *

     Plaintiff,                 *

        v.                  *         Civil Action No. RDB-12-01566

BALTIMORE CITY POLICE     *
DEPARTMENT, *et al.*,
                          *

     Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Chantay Kangalee ("Kangalee" or "Plaintiff") has brought this civil rights action against Defendants Baltimore City Police Department ("BCPD"), Police Commissioner Frederick H. Bealefeld, III, ("Commissioner Bealefeld") and Officer Gahiji Tshamba ("Officer Tshamba" or "Tshamba") (collectively "Defendants") alleging violations of her Fourth Amendment rights and the Due Process clause of the Fourteenth Amendment as well as several Maryland common law claims. This action arises from the death of her brother, Tyron A. Brown ("Brown" or "decedent"), on the evening of June 4, 2010.[1] That evening, Plaintiff Kangalee witnessed Officer Tshamba shoot her brother twelve times outside of a Baltimore nightclub. On June 9, 2011 in the Circuit Court for Baltimore City, Officer Tshamba was found guilty of manslaughter and use of a handgun in furtherance of a

---

[1] Concurrently pending before this Court is the civil rights action of the decedent's estate, mother, wife and minor children against Officer Tshamba, the Baltimore City Police Department, Commissioner Bealefeld and other defendants, *Brown, et al. v. Tshamba, et al.*, RDB-11-00609, originally filed in the Circuit Court for Baltimore City and removed to this Court on March 7, 2011.

crime for which he was sentenced to a total period of incarceration of seventeen years.[2]  On April 12, 2012, Plaintiff filed the original Complaint in this case in the Circuit Court for Baltimore City.[3]  This action was then removed to this Court on May 24, 2012 pursuant to 28 U.S.C. § 1441(a) based on her federal constitutional claims.

Pending before this Court are the Defendants' Motions to Dismiss Plaintiff's original and amended Complaints (ECF Nos. 9, 10, 23 & 24).  Also pending is Plaintiff's Motion for Leave to Amend Complaint (ECF No. 19) and Plaintiff's Motion for Leave to File Surreply in Opposition to Defendant's Motion to Dismiss or, in the Alternative, to Strike Defendant's Argument (ECF No. 31).  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Plaintiff Kangalee's Motion for Leave to Amend Complaint (ECF No. 19) is GRANTED.  As a result, Defendants BCPD, Commissioner Bealefeld and Tshamba's Motions to Dismiss the original Complaint (ECF Nos. 9 & 10) are MOOT.  Additionally, Defendants BCPD, Commissioner Bealefeld and Tshamba's Motions to Dismiss Amended Complaint (ECF Nos. 23 & 24) are GRANTED in part and DENIED in part.  Specifically, Counts I, II, III, IV and V of the Amended Complaint are DISMISSED WITH PREJUDICE and Counts VI, VII and VIII against Defendant Tshamba individually are REMANDED to the Circuit Court for Baltimore City.  Finally, Plaintiff's Motion for Leave to File Surreply in Opposition to Defendant's Motion to Dismiss or, in the Alternative, to Strike Defendant's Argument (ECF No. 31) is DENIED.

---

[2] *State of Maryland v. Gahiji A. Tshamba*, Case No.: 110193001 (Balt. City Cir. Jul. 12, 2010).

[3] Plaintiff Kangalee filed her action over a year after a civil action was filed on behalf of the decedent's estate, mother, wife and minor children.  *See supra* n. 1.

<u>BACKGROUND</u>

For purposes of these pending motions, this Court accepts as true the facts alleged in the plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). As discussed below, Plaintiff's unopposed Motion for Leave to Amend Complaint is granted and as such this Court will refer to the allegations made in the Amended Complaint (ECF No. 19-1).

Plaintiff Chantay Kangalee ("Plaintiff" or "Kangalee") alleges that on the evening of June 4, 2010, she and her brother Tyrone A. Brown ("Brown" or "decedent"), a Marine veteran, were out socializing in the Mount Vernon neighborhood of Baltimore. Pl.'s Am. Compl. ¶ 9, ECF No. 19-1. Around 12:30 or 1:00 am as they were starting to head home, Brown suggested they make one more stop at Red Maple, a Mount Vernon club. *Id.* ¶ 10. As they arrived at Red Maple, "they came up behind a woman, Crystal Ramsey." *Id.* ¶ 11. Brown allegedly patted Ms. Ramsey's buttock which caused Ms. Ramsey to "slap or swing at Brown." *Id.* ¶ 12.

Upon witnessing their interaction, Defendant Tshamba[4] allegedly "pull[ed] up his shirt and remove[d] his department-issued gun." *Id.* ¶ 13. He then allegedly waived his weapon and challenged Brown to touch Ms. Ramsey in that manner again. *Id.* ¶ 14. According to Plaintiff, Defendant Tshamba was dressed in plain clothes and never stated that he was an off-duty police officer or displayed his badge. *Id.* ¶ 15. Plaintiff alleges that "Tshamba's eyes were glassy from drinking and/or drug use [and that h]e smelled of

---

[4] Defendant Gahiji Tshamba was a police officer for the Baltimore City Police Department from August 1994 until his discharge following the events occurring on the evening of June 4, 2010. Pl.'s Am. Compl. ¶ 7, ECF No. 19-1.

alcohol." *Id.* ¶ 16.  Plaintiff further alleges that Tshamba aggressively pointed the gun in her and her brother's direction causing them to back away.  *Id.* ¶ 17.  Plaintiff alleges that because she was only a few feet away from Tshamba, she "became terrified that her life was in danger." *Id.* ¶ 19.

Plaintiff then claims that as Brown was walking away with his hands raised in the air, Tshamba fired thirteen shots "in quick succession" in Brown's direction, twelve of which "connected, striking Brown in the chest, stomach, and groin." *Id* ¶¶ 20-21.  Brown succumbed to his wounds less than an hour later.  *Id.* ¶ 23.  Plaintiff alleges that neither Brown nor she were threats to Defendant Tshamba.  *Id.* ¶ 22.  "On July 12, 2010, Defendant Tshamba was charged [in the Circuit Court for Baltimore City] with first-degree murder, second-degree murder, manslaughter and using a handgun in the commission of a crime." *Id.* ¶ 28.  A little less than a year later, he was found guilty of manslaughter and using a handgun in the commission of a crime and was sentenced to a seventeen year period of incarceration.  *Id.* ¶ 29.

After witnessing the murder of her brother, Plaintiff alleges that she became physically ill.  *Id.* ¶ 24.  She also alleges that since witnessing her brother's killing she has seen a psychologist and a psychiatrist to treat her pain and suffering, depression and anxiety.  *Id.* ¶¶ 30-31.  Moreover, she claims that she has trouble sleeping and is not able to socialize with other people due to her emotional distress.  *Id.* ¶ 32.

Following Defendant Tshamba's sentencing, Plaintiff filed the original Complaint in this case in the Circuit Court for Baltimore City on April 12, 2012 against Defendants Baltimore City Police Department ("BCPD"), Police Commissioner Frederick Bealefeld, III

("Commissioner Bealefeld"), and Officer Gahiji Tshamba ("Tshamba"). This action was then removed to this Court on May 24, 2012 on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1441(a). On July 23, 2012, Plaintiff filed a Motion for Leave to Amend Complaint (ECF No. 19). The Amended Complaint alleges violations of 42 U.S.C. § 1983 against Defendants BCPD, Commissioner Bealefeld and Tshamba (Counts I, II & V). The Complaint also alleges civil conspiracy under 42 U.S.C. § 1985 against Commissioner Bealefeld and Tshamba (Count III) as well as failure or neglect to prevent a conspiracy against the BCPD and Commissioner Bealefeld (Count IV). Specifically, Plaintiff claims that the BCPD and Commissioner Bealefeld authorized Defendant Tshamba to "remain on the force and to carry his department-issued weapon while off-duty," despite prior incidents in which Officer Tshamba allegedly used his weapon while off-duty and after drinking alcohol. Pl.'s Am. Compl. at 2. Finally, Plaintiff alleges the Maryland common law claims of gross negligence, general negligence and intentional infliction of emotional distress (Counts VI, VII and VIII) against Defendant Tshamba in his individual capacity.

STANDARD OF REVIEW

## I.     Motion for Leave to Amend Pursuant to Rule 15(a)

A plaintiff may amend his or her complaint once "as a matter of course at any time before a responsive pleading is served" or "by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Rule 15(a) requires that leave "shall be freely given when justice so requires." In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court enumerated certain factors to guide federal district courts in making a determination with respect to granting leave to amend a complaint. The Court noted that, "[i]n the absence of

any apparent or declared reason—such as undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " *Id.* at 182.

The United States Court of Appeals for the Fourth Circuit has held that Rule 15 "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The court also held that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Id.* at 427; *see also Sciolino v. City of Newport News*, 480 F.3d 642, 651 (4th Cir. 2007).

## II.      Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In ruling on such a motion, this Court is guided by the Supreme Court's instructions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which "require complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation

omitted).   The Supreme Court's *Twombly* decision articulated "[t]wo working principles" courts must employ when ruling on Rule 12(b)(6) motions to dismiss.  *Iqbal*, 556 U.S. at 678.

First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference.  *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.)  Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679.  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.   Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim.   It need only *allege facts* sufficient to *state* elements of the claim.") (emphasis in original) (internal quotation marks and citation omitted).  In short, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief." *Iqbal*, 556 U.S. at 664.

<u>ANALYSIS</u>

## I.      Plaintiff's Motion to for Leave to Amend Complaint

Two months after this case was removed from the Circuit Court for Baltimore City to this Court, Plaintiff Chantay Kangalee ("Plaintiff" or "Kangalee") filed a Motion for

Leave to Amend Complaint (ECF No. 19). Defendants Baltimore City Police Department ("BCPD"), Police Commissioner Frederick Bealefeld, III ("Commissioner Bealefeld") and Officer Gahiji Tshamba ("Tshamba") (collectively "Defendants") have not opposed this motion but have instead filed their respective motions to dismiss the amended complaint (ECF Nos. 23 & 24). Under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend "shall be freely given when justice so requires." Moreover, the Supreme Court noted that, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " *Foman v. Davis*, 371 U.S. 178, 182 (1962). In this case, there does not appear to be any undue delay, bad faith or dilatory motive, or futility, nor have the Defendants argued that to amend would unduly prejudice them. Therefore, Plaintiff's Motion for Leave to Amend Complaint (ECF No. 19) is GRANTED.

## II.    Plaintiff's Section 1983 Claims (Counts I, II & V)

In the first count of the Amended Complaint, Plaintiff Kangalee alleges a cause of action under 42 U.S.C. § 1983 against Defendants Officer Tshamba and Baltimore City Police Department for violation of her substantive due process rights under the Fourteenth Amendment. Specifically, Kangalee claims that Defendant Tshamba's conduct shocked the conscience and deprived her of a relationship with her brother as well as of her rights and privileges guaranteed by the Constitution of the United States. She also alleges that this conduct caused her emotional injuries. In Count II, Kangalee alleges that Defendants BCPD, Commissioner Bealefeld and Officer Tshamba violated her Fourth Amendment

rights to be free from unlawful seizure.   In both counts, Plaintiff claims that the BCPD is vicariously liable for these constitutional violations.   Finally, in Count V, Kangalee alleges that the BCPD and Commissioner Bealefeld's failure to properly train, supervise and discipline Officer Tshamba resulted in the alleged constitutional violations.   In response, Defendants contend that they are not liable for the alleged violations under Section 1983 because (1) government units are not directly liable under that provision, (2) Plaintiff's Fourth and Fourteenth Amendment claims are not cognizable under Section 1983, (3) Defendants Bealefeld and Tshamba are entitled to qualified immunity, and (4) Plaintiff fails to state a plausible liability claim against both the BCPD and Commissioner Bealefeld.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable."   Under 42 U.S.C. § 1983, a municipality or employer cannot be held vicariously liable based solely on an agency relationship.   *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978).   Therefore, in this case, Kangalee must first sufficiently allege that her constitutional rights were violated by the conduct of Officer Tshamba in order to allege related causes of action against the BCPD and Commissioner Bealefeld.   Once Kangalee sufficiently alleges that Defendant Tshamba violated her constitutional rights, the BCPD and Commissioner Bealefeld may be liable under Section 1983 where "the constitutionally offensive acts of city employees [were] taken in furtherance of some municipal 'policy or custom.' "   *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell*, 436 U.S. at 694).   A plaintiff may establish the

existence of such a policy or custom in several ways: "1) through an express policy, such as a written ordinance or regulation; 2) through the decisions of a person with final policymaking authority; 3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or 4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.' " *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)(quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Conversely, where Plaintiff cannot plausibly allege a constitutional violation against Defendant Tshamba, the *Monell* liability claim against the BCPD and Commissioner Bealefeld must fail. *See Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999) (When there is no "underlying constitutional violation[ ] by any individual, there can be no municipal liability."); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 420–21 (4th Cir. 1996).

A civil rights action under Section 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). The civil rights statute 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver*, 510 U.S. 266, 271 (1994), quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979). To state a claim under Section 1983, a plaintiff must allege that: (1) "the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Liability is appropriate under Section 1983 only to remedy violations of federally protected

rights.  *See Baker v. McCollan*, 443 U.S. at 145-46; *Clark v. Link*, 855 F.2d 156, 161, 163 (4th Cir.1988) (holding that Section 1983 claims rest on violations of the Constitution or statutes of the United States, not solely on violations of state statutes or common law torts).  In this case, Kangalee has alleged that Officer Tshamba was acting under color of state law.  What remains to be determined is whether she has stated a plausible claim that her rights, privileges, or immunities secured by the Constitution or laws of the United States were violated.

As previously discussed, Kangalee alleges that her rights under the Fourth and Fourteenth Amendment were violated.  *Rucker v. Harford County*, 946 F. 2d 278, 281 (4th Cir 1991) directly forecloses Plaintiff's Fourth Amendment cause of action.  In *Rucker*, the father of an innocent bystander, who was accidently shot when a police officer fired at the vehicle of a reckless driver, brought an action on behalf of the bystander against the police officer under Section 1983 for violations of the bystander's Fourth Amendment rights.  946 F.2d 279-80.  The United States Court of Appeals for the Fourth Circuit determined that the police officer did not violate the bystander's Fourth Amendment rights because under the circumstances the bystander was not seized.  *Id.* at 280.  Specifically, the Fourth Circuit held that "one is 'seized' within the Fourth Amendment's meaning only when one is the *intended object* of a physical restraint by an agent of the state."  *Id.*  at 281 (emphasis in original).  Moreover, the Court stated that "unintended consequences of government action cannot form the basis for a fourth amendment violation."  *Id.* (quoting *Ansley v. Heinrich*, 925 F.2d 1339, 1344 (11th Cir. 1991).

The Supreme Court has also stated that "a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980). "[C]ircumstances that might indicate a seizure . . . [include] the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* (citation omitted). In sum, the seizure of a person "requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis in original).

While Plaintiff has, in this action, alleged that Defendant Tshamba pointed and waived his gun in her direction as well as in the direction of her brother (the decedent) and that she was not free to leave, her claim is not plausible in light of her testimony during Tshamba's criminal trial.[5] During her sworn testimony, she stated that Tshamba first pointed his gun toward her brother. *See* June 7, 2012 Transcript of Proceedings at 17-18, ECF No. 31-1 [hereinafter Transcript]. At that time, she was standing next to her brother and then moved behind him. *Id.* Her brother was then standing between her and Tshamba. *Id.* She also stated that Tshamba instructed her brother to get on the ground. *Id.* Moreover, she explained that her brother and Tshamba then moved away and were "out of her view on

---

[5] "A court may consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice' without converting a 12(b)(6) motion into a motion for summary judgment." *Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27*, 855 F. Supp. 2d 476, 481 n. 2 (D. Md. 2012) (citation omitted). A court may consider "matters of public record" that are appropriate for judicial notice. *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "State court filings are matters of public record." *Waugh Chapel South*, 855 F. Supp. 2d at 481 n. 2.

the side by the dumpster" and that Tshamba was still pointing the gun in her brother's direction and no longer in hers.  *Id.* at 42.  Additionally, Kangalee stated in her testimony and repeats in her Complaint, that Tshamba never identified himself as a police officer.  She only learned that Tshamba was a police officer when he and her brother had moved away behind the dumpster and she asked that someone call the police.  Transcript at 48.  Kangalee has neither alleged that there was a physical force applied against her, nor that she submitted to Tshamba's authority as a police officer.  Accordingly, Kangalee's statements under oath and her allegations in the Amended Complaint indicate that she was not seized within the meaning of the Fourth Amendment.  As such, she cannot allege a plausible Section 1983 claim of deprivation of her Fourth Amendment rights against Officer Tshamba.

As for her Fourteenth Amendment claim, Kangalee alleges that Defendant Tshamba's conduct deprived her of her substantive due process right to familial association with her brother.  "The substantive component of the Due Process Clause 'provides heightened protections against government interference with certain fundamental rights and liberty interests.' "  *Morrow v. Farrell*, 187 F. Supp. 2d 548, 447 (D. Md. 2002) (citing *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997); *Reno v. Flores*, 507 U.S. 292, 301-302 (1993)).  The Fourth Circuit has held that "conduct which 'shocks the conscience,' . . ., or conduct which 'amount[s] to brutal and inhumane abuse of official power literally shocking to the conscience,' . . . violates the substantive guarantees of the Due Process Clause." *Temkin v. Frederick Cnty. Comm'n*, 945 F.2d 716, 720 (4th Cir 1991) (citations omitted). However, the Fourth Circuit has not thus far recognized substantive due process claims for the loss of a loved one and support of a family member.  *See Shaw v. Stroud*, 13 F.3d 791, 804-

05 (4th Cir. 1994).   Moreover, the Supreme Court "has never held that the protections of substantive due process extend to claims based on governmental action which affects the family relationship only incidentally."   *Id.* at 805 (citation omitted).   This Court has previously stated that "in the direct injury context, the *aggrieved person* under Section 1983 is the target of state action which deprives the victim of their personal rights under the color of state law."   *Jones v. Prince George's Cnty.*, AM-04-1735, 2005 WL 1074353, at * 5 (D. Md. April 28, 2005) (citing *Pittsley v. Warish*, 927 F.2d 3, 9 (1st Cir. 1991)) (emphasis in original). Conversely, an incidental injury occurs when the conduct is directed at one of the parties but not toward the relationship itself.   *Jones*, 2005 WL 1074353, at * 5 (citation omitted).   It is important to note that in both the Fourth Circuit opinion in *Shaw v. Stroud* and this Court's opinion in *Jones v. Prince George's County* substantive due process claims of wives and children of decedents injured by police officers were dismissed.   It is, therefore, well established that a family member cannot bring a claim alleging that *her* constitutional rights were violated as a result of the death of another individual resulting from misconduct by a police officer.

In this case, although Plaintiff attempts to argue otherwise and confuses the standard by which this Court must evaluate a substantive due process claim for elements of that claim, Plaintiff essentially alleges that her substantive due process rights guaranteed by the Fourteenth Amendment were violated on account of Defendant Tshamba's actions which caused the death of her brother.   Plaintiff does not allege "any direct physical injury to [her] person inflicted as a result of [Tshamba's] actions."   *Jones*, 2005 WL 1074353, at * 6.   "To the extent that [she] has alleged a constitutional violation, that violation was directed at the decedent, and not" her.   *Id.*   Accordingly, her injuries are incidental to those sustained by the

decedent.  Because this type of claim is not cognizable, Kangalee has not stated a claim for the deprivation of her substantive due process rights under the Fourteenth Amendment against Officer Tshamba.

As Kangalee cannot allege plausible Section 1983 claims against Defendant Tshamba, her Section 1983 claims against Baltimore City Police Department and Commissioner Bealefeld must also fail.[6]  As such, Plaintiff's claims under 42 U.S.C. § 1983 in Counts I, II and V are DISMISSED WITH PREJUDICE.

### III.   Plaintiff's Section 1985 and Section 1986 Claims (Counts III & IV)

Plaintiff Kangalee's claim under 42 U.S.C. § 1985 in Count III alleges that Commissioner Bealefeld, in his individual capacity, conspired with Office Tshamba to deprive Kangalee of her constitutional rights by requiring off-duty employees to carry weapons and by failing to discipline as well as properly train Officer Tshamba despite previous incidents of "alcohol-fueled" shootings.  Pl.'s Am. Compl. ¶¶ 58-64, ECF No. 19-1. In Count IV, Plaintiff alleges that the BCPD and Commissioner Bealefeld neglected to prevent or "refused to prevent or aid in preventing the conspiracy" under 42 U.S.C. § 1986. *Id.* ¶¶ 65-71.  Defendants contend that Kangalee's Section 1985 and 1986 claims are barred by the intracorporate conspiracy doctrine and that she fails to allege a plausible claim under both statutory provisions.

This Court has previously noted that the "intracorporate conspiracy doctrine . . . extends to government entities."  *Mchugh v. Mayor of Baltimore*, BPG-09-1214, 2011 WL

---

[6] In light of the fact that Kangalee fails to sufficiently allege a violation of her own constitutional rights, this Court need not address whether any allegedly unconstitutional acts were in furtherance of some municipal policy or custom.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978); *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984).

1135853, at * 11 n. 15 (D. Md. March 24, 2011) (citing *Roberson v. Bowie State Univ.*, 899 F.

Supp. 235, 238 (D. Md. 1995); *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985).

Moreover, the Fourth Circuit has held that agents from a single legal entity are "legally

incapable of conspiracy, which requires multiple parties acting together." *Lewin v. Cooke*, 28

Fed. App'x 186, 195 (4th Cir. 2002) (citation omitted). The Fourth Circuit has also identified

two exceptions to the intracorporate conspiracy doctrine: (1) when a corporate officer has an

"independent personal stake" in achieving the illegal objectives of the corporation, *Greenville*

*Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974), and (2) when the agent's

acts are unauthorized. *Buschi v. Kirven*, 775 F.2d 1240, 1252–3 (4th Cir. 1985). Plaintiff

argues that the intracorporate conspiracy doctrine is inapplicable in this case because

although Officer Tshamba acted under color of law, "he exceeded the bounds of his

authority when point[ing] his duty weapon at Ms. Kangalee without probable cause or even

suspicion." Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss at 22, ECF No. 26. However, in

her Amended Complaint, Plaintiff alleges that "at all times relevant to this matter, Officer

Tshamba acted under color of law." Pl.'s Am. Compl. ¶¶ 35, 49. She therefore claims that

in all circumstances he was acting as an agent of the Baltimore City Police Department.

Accordingly, the intracorporate conspiracy doctrine is applicable and Plaintiff fails to allege a

claim under Section 1985 against Defendants Commissioner Bealefeld and Tshamba.

Even if the intracorporate conspiracy doctrine were not applicable, Plaintiff must still

allege a cause of action for conspiracy under Section 1985 to proceed with this claim. In

order to state a claim for conspiracy under section 1985, a plaintiff must allege sufficient

facts to show "(1) a conspiracy of two or more persons, (2) who are motivated by a specific

class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Unus v. Kane*, 565 F.3d 103, 126 (4th Cir. 2009).  The plaintiff must also allege the existence of "an agreement or a 'meeting of the minds' by defendants to violate [her] constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995).  The Fourth Circuit has noted that it has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.*  Thus, Plaintiff has a "weighty burden to establish a civil rights conspiracy," and, although direct evidence of a meeting of the minds is not necessary, she "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citations omitted); *Marshall v. Odom*, 156 F. Supp. 2d 525, 532 (D. Md. 2001) (citing *Hinkle*, 81 F.2d at 421).  In this case, Plaintiff has failed to meet her high burden to allege that Commissioner Bealefeld and Tshamba had an agreement or a "meeting of the minds" to deprive her of her constitutional rights.  Moreover, Plaintiff also failed to allege that Commissioner Bealefeld and Tshamba were "motivated by a specific class-based, invidiously discriminatory animus." *Unus*, 565 F.3d at 126.  Accordingly, Plaintiff does not plausibly allege any of the elements of a § 1985 claim.  Thus, Plaintiff's Section 1985 claim against Commissioner Bealefeld and Officer Tshamba in Count III is DISMISSED WITH PREJUDICE.

Section 1986 provides that:

> Every person who, having knowledge that any of the wrongs conspired to be
> done, and mentioned in section 1985 of this title, are about to be committed,
> and having power to prevent or aid in preventing the commission of the same,
> neglects or refuses so to do . . . shall be liable to the party injured . . . for all
> damages caused by such wrongful act, which such person by reasonable
> diligence could have prevented. . .

Notably, claims brought under Section 1986 are derivative of claims under Section 1985. Thus, Plaintiff's failure to state a claim under Section 1985 is fatal to her claim under section 1986. *See, e.g., Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984) ("Hence, there can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985."). Accordingly, Plaintiff's Section 1986 claim against Baltimore City Police Department and Commissioner Bealefeld in Count IV is DISMISSED WITH PREJUDICE.

## IV.    Remand of Plaintiff's State Law Claims (Counts VI, VII and VIII)

Plaintiff's claims in Counts VI, VII and VIII allege Maryland common law claims of gross negligence, general negligence and intentional infliction of emotional distress against Defendant Officer Tshamba. Having disposed of Kangalee's federal claims, this Court must address whether her remaining state law claims should be remanded to state court. Remand is required in some instances and optional in others. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Additionally, even if the court has original jurisdiction over a civil action, the court nevertheless has discretion to remand a case to state court if, among other things, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Remand is favored in cases turning primarily on questions of state law,

because "[n]eedless decisions of state law [by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 729 (1966). Thus, in a case where federal claims are eliminated before trial, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

This Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. 1367(c)(3). Kangalee's remaining causes of actions are all brought under state law and involve Maryland tort law issues. Thus, these claims are best adjudicated in Maryland state court. Furthermore, this Court finds that the interests of fairness and judicial economy are in no way compromised by a remand to the state court. Accordingly, Plaintiff's state law claims, Counts VI, VII and VIII, asserted against Officer Tshamba individually are remanded to the Circuit Court for Baltimore City.

## V.      Plaintiffs' Motion for Leave to File a Surreply or to Strike

On October 19, 2012, Plaintiff moved for Leave to File Surreply in Opposition to Defendant's Motion to Dismiss or, in the Alternative, to Strike Defendant's New Argument (ECF No. 31). Specifically, Plaintiff argues that this Court should allow her to file a surreply to address Defendant Tshamba's request that this Court consider extrinsic evidence in the form of Plaintiff Kangalee's testimony during Tshamba's criminal trial. Alternatively, Plaintiff requests that this Court strike any argument by Defendant Tshamba pertaining to this "extrinsic evidence."

A party moving for leave to file a surreply must show a need for a surreply. *Stoyanov v. Mabus*, No. 07–1764, 2009 WL 4664518, at *8 (D. Md. Dec. 9, 2009). If a defendant raises new legal issues or new theories in its reply brief, there is a basis to permit a plaintiff to file a surreply. *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 862 (D. Md. 2009); *Interphase Garment Solutions, LLC, v. Fox TV. Stations, Inc.*, 566 F. Supp. 2d 460, 466 (D. Md. 2008). Moreover, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003). In this case, the Defendant did not raise any new legal issue or theory. Plaintiff mainly contests this Court's ability to review her trial testimony in state court without converting the motion to dismiss into a motion for summary judgment. However, "[a] court may consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice' without converting a 12(b)(6) motion into a motion for summary judgment." *Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27*, 855 F. Supp. 2d 476, 481 n. 2 (D. Md. 2012) (citation omitted). "State court filings are matters of public record." *Id.* Therefore, Plaintiff's Motion to File a Surreply is DENIED.

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike and only permits the striking from a pleading of "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike under Rule 12(f) are disfavored and "should be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Schultz v. Braga*, 290 F. Supp. 2d 637, 654–55 (D. Md. 2003). Accordingly, "in reviewing motions to strike . . . federal courts have traditionally 'view[ed]

the pleading under attack in a light most favorable to the pleader.'" *Palmer v. Oakland Farms, Inc.*, No. 5:10-cv-00029, 2010 WL 2605179, at *2 (W. D. Va. June 24, 2010) (quoting *Clark v. Milam*, 152 F.R.D. 66, 71 (S. D. W. Va. 1993)).  The Defendant's response is related to the controversy and does not prejudice the Plaintiff.  Moreover, contrary to what Plaintiff alleges, Defendant does not make a new argument but merely responds to Plaintiff's own contentions.  Accordingly, Plaintiff's Motion to Strike is DENIED.  Therefore, Plaintiff Kangalee's Motion for Leave to File Surreply in Opposition to Defendant's Motion to Dismiss or, in the Alternative, to Strike Defendant's New Argument (ECF No. 31) is DENIED.

<u>CONCLUSION</u>

For the reasons stated above, Plaintiff Kangalee's Motion for Leave to Amend Complaint (ECF No. 19) is GRANTED.  As a result, Defendants BCPD, Commissioner Bealefeld and Tshamba's Motions to Dismiss the original Complaint (ECF Nos. 9 & 10) are MOOT.  Additionally, Defendants BCPD, Commissioner Bealefeld and Tshamba's Motions to Dismiss Amended Complaint (ECF Nos. 23 & 24) are GRANTED in part and DENIED in part.  Specifically, Counts I, II, III, IV and V of the Amended Complaint are DISMISSED WITH PREJUDICE and Counts VI, VII and VIII against Defendant Tshamba individually are REMANDED to the Circuit Court for Baltimore City.  Finally, Plaintiff's Motion for Leave to File Surreply in Opposition to Defendant's Motion to Dismiss or, in the Alternative, to Strike Defendant's Argument (ECF No. 31) is DENIED.

A separate Order follows.

Dated:          November 7, 2012          /s/_____

                                          Richard D. Bennett
                                          United States District Judge